UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NICHOLAS A. GREEN,

        Plaintiff,

v.

TRENT TAYLOR et al.,

        Defendants.
_____/

Case No. 1:22-cv-1007

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 10.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 7.)

In an order (ECF No. 13) entered on December 13, 2022, the Court directed Plaintiff to file an amended complaint within twenty-eight days. Plaintiff filed his amended complaint (ECF No. 14) on January 5, 2023. This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a

defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Taylor, Alberts, and Wexford County will be dismissed for failure to state a claim. Plaintiff's state law claims against Defendants Taylor, Alberts, and Wexford County will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's claims against Defendant Barbara remain in the case. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 14, PageID.37).

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

events about which he complains, however, occurred during Plaintiff's incarceration at the Wexford County Jail in Cadillac, Michigan. Plaintiff sues Wexford County, Sheriff Trent Taylor, Facility Sergeant Unknown Alberts, and Lead Nurse Barbara. Plaintiff indicates that he is suing Defendants Wexford County, Taylor, and Alberts in their official capacities only. (ECF No. 14, PageID.38.) He sues Defendant Barbara in her individual capacity. (*Id.*)

In his amended complaint, Plaintiff alleges that when he was incarcerated at the Kent County Jail, he was prescribed medications, including Remron and Catapress, for post-traumatic stress disorder (PTSD), bipolar disorder, and anxiety disorder. (*Id.*, PageID.39.) Plaintiff took those medications regularly for more than 90 days. (*Id.*) He was then transferred to the Wexford County Jail for probation violations. (*Id.*) The booking officer (not a party) asked him what medications he took, and Plaintiff told him Remron and Catapress. (*Id.*)

Plaintiff was in the holding cell in the booking area for a day. (*Id.*) He asked Defendant Barbara about his medications, and she responded that he was not getting them because Kent County Jail did not send any with Plaintiff. (*Id.*) A week later, Plaintiff spoke with his mother on the phone, and she could tell that his anxiety was getting worse. (*Id.*) Plaintiff told her that he was not getting his medications. (*Id.*) His mother called the jail and was told the same. (*Id.*)

Plaintiff contends that he did not receive his medications during his entire stay at the Wexford County Jail. (*Id.*) He suffered mental and emotional anguish from being unable to sleep at night due to night terrors and severe anxiety. (*Id.*, PageID.40.) Plaintiff also received criminal charges after he broke a visitor phone, which he attributes to his inability to receive his medications. (*Id.*) Plaintiff had an interview with Defendant Alberts, "who also knew [Plaintiff had been told [he could not] get [his] medications." (*Id.*) Plaintiff avers that Defendant Taylor, as

4

Sheriff, is responsible for "all facility staff and oversees all decisions that happen in the facility." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert claims of deliberate indifference to his mental health needs. Plaintiff also notes that he is asserting medical malpractice claims. (*Id.*, PageID.41.) Plaintiff seeks damages, and he asks that Defendants to be held "accountable for violating [his] right to mental health." (*Id.*, PageID.42.)

## II.  Motion to Appoint Counsel

Plaintiff requests the appointment of counsel to represent him in this matter. (*Id.*, PageID.37.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989). Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Accordingly, Plaintiff's motion to appoint counsel will be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

5

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Section 1983 Claims**

        **1.**    **Claims Against Wexford County and Defendants Taylor and Alberts**

Plaintiff seeks to hold Wexford County liable, arguing that the county is "a bonded incorp[o]ration" that should pay for Plaintiff's mental and emotional distress. (ECF No. 14,

PageID.40.) He also asserts that the county's agents violated his rights. (*Id.*) Plaintiff has also named Defendants Taylor and Alberts in their official capacities only. (*Id.*, PageID.38.) He suggests that Defendant Taylor is liable because he is "in charge of all facility staff and oversees all decisions that happen in the facility," and that Defendant Alberts "knew [that Plaintiff had] been told [he could not] get [his] medications." (*Id.*, PageID.40.)

Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, because Defendants Taylor and Alberts represent Wexford County, Plaintiff's suit against them in their official capacities necessarily intends to impose liability on the county. Wexford County, however, may not be held vicariously liable for the actions of its employees under Section 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional

deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508. Here, Plaintiff's amended complaint is devoid of any allegations suggesting that his alleged constitutional injury was the result of an official policy or custom employed by Wexford County. The Court, therefore, will dismiss Plaintiff's claims against Wexford County, as well as his official capacity claims against Defendants Taylor and Alberts. Accordingly, that leaves only Plaintiff's individual capacity claims against Defendant Barbara.

### 2. Claim Against Defendant Barbara

The Court has construed Plaintiff's complaint to assert a deliberate indifference claim against Defendant Barbara premised upon the denial of Plaintiff's mental health medications.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of

the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Because Plaintiff does not specify the nature of his custody, the Court considers Plaintiff's claim under both the Eighth and Fourteenth Amendment standards.[2]

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir.

---

[2] Plaintiff does not specify the nature of his custody at the Wexford County Jail but indicates that he was transferred there for probation violations. The issue of whether a person confined during the pendency of probation violation proceedings should be treated as a pretrial detainee or a convicted prisoner for purposes of a constitutional challenge to jail conditions is an issue upon which courts have differed. *See Reinoso-Delacruz v. Ruggerio*, No. 3:19-cv-149, 2019 WL 2062434, at *2–3 (D. Conn. May 9, 2019) (finding that inmate awaiting determination of probation violation proceedings was considered a pretrial detainee for purposes of evaluating claim that jail officials failed to protect inmate from assault by a fellow inmate); *Chrisco v. Hayes*, No. 17-cv-00072, 2017 WL 5404191, at *4 (D. Colo. Nov. 14, 2017) ("Pretrial detainees include incarcerated individuals awaiting trial on pending criminal charges and individuals awaiting adjudication on pending accusations that they have violated the terms of their probation or parole." (citations omitted)); *Hill v. Cnty. of Montgomery*, No. 914-cv-00933, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) (discussing that status of inmate whose probation violation proceedings were pending was "more akin to that of a pretrial detainee" (dictum; citing cases)); *Weishaar v. Cnty. of Napa*, No. 14-cv-01352, 2016 WL 7242122, at *6–7 (N.D. Cal. Dec. 15, 2016) (concluding that jail inmate arrested for probation violation was a pretrial detainee for purposes of claim that jail officials failed to take measures to prevent inmate's suicide); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 592–93 (7th Cir. 2003) (noting "uncertainty" in the law, pre-*Kingsley*, but deeming issue "purely academic" because, at that time, the Eighth and Fourteenth Amendment standards were the same). *But see Ford v. Grand Traverse Cnty.*, No. 1:04-cv-682, 2005 WL 2572025, at *1 n.1 (W.D. Mich. Oct. 12, 2005) (concluding that defendant being held for suspected parole violation was imprisoned in connection with a convicted offense and, therefore, was not a pretrial detainee).

2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Until recently, the Sixth Circuit applied the Eighth Amendment's prohibition on cruel and unusual punishment to Fourteenth Amendment claims for inadequate medical care as well, requiring that a plaintiff demonstrate both the objective and subjective elements of deliberate indifference. *See Trozzi v. Lake Cnty.*, 29 F.4th 745, 751–52 (6th Cir. 2022) (discussing case history for the Eighth Amendment's deliberate indifference standard). However, after the Supreme Court's opinion in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which eliminated the subjective element of a pretrial detainee's excessive force claim, in *Brawner v. Scott Cnty.*, 18 F.4th 551 (6th Cir. 2021), the Sixth Circuit "appl[ied] *Kingsley*'s reasoning to claims alleging inadequate medical care[, b]ut [the Sixth Circuit] stopped short of fully *eliminating* the subjective injury." *Trozzi*, 29 F.4th at 752–53 (emphasis in original) (quoting *Brawner*, 14 F.4th at 591). Specifically, the Sixth Circuit held that:

> a plaintiff must satisfy three elements for an inadequate-medical-care claim under the Fourteenth Amendment: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk.

*Id.* at 757–58.

Prison officials must provide medically necessary mental health treatment to those individuals in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976). In his amended complaint, Plaintiff alleges that he told the booking officer at the Wexford County Jail that he had

been prescribed Remron and Catapress when he was incarcerated at the Kent County Jail. (ECF No. 14, PageID.39.) Plaintiff spent a day in a cell in the booking area before he saw Defendant Barbara. (*Id.*) When Plaintiff saw Defendant Barbara, he asked her about his medications. (*Id.*) She responded that Plaintiff would not be receiving any medications because the Kent County Jail did not send any with Plaintiff. (*Id.*) Plaintiff contends that Defendant Barbara "denied [him] any option of receiving [his] medications which in [the] long run could cause unforeseen damage." (*Id.*, PageID.40.) Plaintiff asserts that he did not receive his mental health medications during the entirety of his incarceration at Wexford County Jail, and that he suffered night terrors and severe anxiety as a result. (*Id.*)

Although Defendant Barbara may not have had authority to re-prescribe Plaintiff's medications to Plaintiff, the amended complaint suggests that she was aware of Plaintiff's prescriptions but took no action to refer Plaintiff to a physician who could prescribe them to him. At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, applying either the Eighth Amendment or Fourteenth Amendment standard, the Court may not dismiss Plaintiff's denial of medications claim against Defendant Barbara on initial review.

### B. State Law Claims

As noted *supra*, Plaintiff indicates that he is asserting medical malpractice claims under state law against Defendants. (ECF No. 14, PageID.41.) Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law, *see Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995), and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle*, 429 U.S. at 106.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because the Court has dismissed Plaintiff's federal claims against Defendants Taylor, Alberts, and Wexford County, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against them. Those claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court. Because Plaintiff continues to have a pending federal claim against Defendant Barbara, the Court will exercise supplemental jurisdiction over Plaintiff's state law claim against her.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Taylor, Alberts, and Wexford County will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and his state law claims against those Defendants will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. Plaintiff's

claims against Defendant Barbara remain in the case. The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 14, PageID.37).

An order consistent with this opinion will be entered.


Dated:   January 26, 2023                               /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge